IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NASSER ALMUTAIRI, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL BROADCASTING BUREAU, | ) | CIVIL ACTION NO. RWT-06-1929 |
| | ) | |
| Defendant | ) | |
| | ) | |

## DECLARATION OF NASSER ALMUTAIRI

I, NASSER ALMUTAIRI, declare as follows:

1. My name is Nasser Almutairi. I reside in Rockville, Maryland. I am a dark-skinned Yemeni. I was born in Yemen in 1959 and emigrated to the United States in 1995. On March 22, 2003, I became a U.S. citizen.

2. On or about April 17, 1997, I was involved in an automobile accident in which I suffered serious injuries, including some breaks to my back, hip, leg, and ankle. As a result of those injuries, I suffer ongoing serious pain in my leg, walk with a pronounced limp, and must use a leg brace or a cane to stand or walk. My injuries are so severe that I can only walk approximately five steps without assistance, after which I need to stop and lean against something to rest. Between 2003 and 2004, however, I was in significantly more pain than at present, and I required even greater assistance to walk. In recent months, due to additional injuries, I have been hospitalized and unable to walk more than very short distances.

3. My physician, Dr. P. Gupta, provided me with a certification on December 5, 1998 discussing my injury. A true and correct copy of that certification is attached to this Declaration as Exhibit 1. Additionally, Jamal Numan, a friend of mine who served previously as the Deputy Ambassador at the Embassy of Yemen in Washington, D.C., provided me with a statement under oath on May 26, 2006 regarding his observation of my injuries. A true and correct copy of that statement is attached to this Declaration as Exhibit 2.

4. I have undergraduate and graduate degrees in journalism from a university in Yemen, and I received a management degree from Montgomery College in Rockville, Maryland. I have attended various workshops and conferences relating to journalism and management.

5. I am a native Arabic speaker. I have extensive skills in written and spoken Arabic. I am proficient in Modern Standard Arabic and also in the colloquial "street" dialects of Yemen and other Gulf countries. I previously have taught colloquial Arabic dialects at the Diplomatic Language Services School in Arlington, Virginia; at Dictyon, LLC, a language school, in Greenbelt, Maryland; and at Second Language Testing, Inc., a language school, in Rockville, Maryland. I am also fluent in spoken and written English.

6. I have experience working as a print and broadcast journalist in both English and Arabic. I worked as a correspondent for the British Broadcasting Corporation ("BBC") for eight years, and I also worked as a writer for the al-Jazeera television station, as a contributing writer for al-Arabia Satellite TV, and a broadcaster at a number of radio and television stations in Yemen. I served as a reporter and as an editor for various Arabic- and English-language newspapers, including Yemen's first English newspaper. I have been

published in both English and Arabic in a number of newspapers and magazines from a variety of regions, including al-Maserah (London), al-Fajer (London), Middle East Today Newsletter (Washington, D.C.), al-Bayan (Dubai), al-Siasa (Kuwait), al-Siasa (Sudan), and Yemen Call (Yemen). Due to my studies and experience, I possess strong knowledge of the culture, politics, and social and economic issues of the Middle East.

7. I first applied for a GS-12 level Arabic International Radio Broadcaster ("IRB") position at Radio Sawa in June 2003. I was responding to Vacancy Announcement M/P-03-02, which indicated that there were "multiple positions" available. Shortly after submitting this application, I received a telephone call to set up an interview appointment. I cannot recall the precise date of the telephone call and do not have a copy of the application. I was told that Mouafac Harb, director of Radio Sawa, and Daniel Nassif, managing editor of Radio Sawa, were out of town, and that my interview appointment would be with Munir Nasser, supervisor of the IRB Internet Unit of Radio Sawa.

8. Mr. Nasser interviewed me for the GS-12 IRB position on June 12, 2003 at the Radio Sawa office in Washington, D.C. It appeared to me that the interview had gone well and that Mr. Nasser was impressed with my background and experience. On the same day as that interview, Mr. Nasser orally extended to me a conditional offer of employment, subject to my obtaining the obligatory security clearance. Mr. Nasser asked me to undergo various security clearance procedures, and he told me that the job was mine so long as I received my security clearance.

9. I promptly and diligently completed the requested security clearance procedures. Several days after my interview, I returned to the Radio Sawa office in Washington,

D.C. to have my fingerprints taken.  On a later date, I visited a security office on Pennsylvania Avenue, in Washington, D.C., that serviced several BBG broadcasting organizations, and I met and interviewed with a security clearance officer for several hours.  I do not recall the security officer's name.

10. Within several days after my interview with the security clearance officer, I returned to the Radio Sawa office at Mr. Nasser's invitation so that Mr. Nasser could provide me with an orientation of the studios and an introduction to the newsroom staff.  During this visit, Mr. Nasser introduced me to approximately thirty other employees as someone who would begin work soon at Radio Sawa.  During that orientation, Mr. Nasser asked me whether I could start immediately.  Upon being reminded that my security clearance had to be approved before I could start, Mr. Nasser stressed that I should ensure my immediate availability for the position because he said that he would call me to start work as soon as the security clearance was received.  Mr. Nasser even showed me the desk and computer that I would use once I started.

11. During my orientation, Mr. Nasser introduced me to Daniel Nassif, the Managing Editor of MERN/Radio Sawa.  As I was walking away from Mr. Nassif, I overheard him say, "We don't need more people with disabilities here."  I found his words very hurtful and demeaning, and inappropriate in a professional environment.

12. Because Mr. Nasser told me to make myself immediately available for the GS-12 IRB position, I informed my clients at various newspapers and Arabic language schools in the region that I would no longer provide services as of July 2003.

13. Sometime in August, I telephoned the security officer who had interviewed me to inquire about the status of my security clearance.  In that telephone

conversation, I learned that the security clearance officer had cleared me without problem, and that my security clearance approval had been forwarded to Radio Sawa on or about July 8, 2003. I waited to hear from Radio Sawa a couple more weeks. When I still had not heard back, and because I knew my clearance had been approved, I called Mr. Nasser on or about August 27, 2003 to inquire why I had not yet been asked to start working. During that call, Mr. Nasser told me that he had been impressed with me, but had "reservations" about my security clearance. When I told Mr. Nasser that, in fact, the security clearance officer had confirmed that there had been no issue with my clearance, Mr. Nasser then stated instead that the management at Radio Sawa had expressed a "reservation" about hiring me. He provided no explanation as to what such "reservation" was, but Mr. Nasser told me that he would call me once the issue had been resolved.

14. In an effort to resolve any potential issue, I tried to contact Mr. Harb and his secretary several times to try to set up a meeting or telephone conference to discuss and resolve the matter, but they declined to talk with me.

15. While continuing to inquire about the status of my July 2003 application, as a back-up, I resubmitted my application for GS-12 Arabic IRB positions twice in October 2003, once under Vacancy Announcement M/P-03-02 (which remained open) and once under Vacancy Announcement M/P-03-177A. I also resubmitted an application in December 2003, once again under Vacancy Announcement M/P-03-02, after that announcement had been reposted on the Washington Post Jobs website on November 18, 2003. (I printed the announcement from the Washington Post Jobs website; a true and correct copy of that printout is attached to this Declaration as Exhibit 3.) I received separate rejection letters in response to each

of those three application submissions.  True and copies of those rejection letters are attached to this Declaration as Exhibit 4, Exhibit 5, and Exhibit 6.

      16.    I first learned in early March 2004 that I would not be hired as a GS-12 IRB at Radio Sawa pursuant to the application I submitted in June 2003.  After pressing Mr. Nasser for an explanation as to why I would not be hired, he left a voicemail message on my telephone answering machine on March 17, 2004.  I have maintained that recording, and a true and correct audio copy is provided on a CD attachment to this Declaration as Exhibit 7.  A true and accurate transcription of that recorded message is as follows: "Hello, Dr. Nasser [Almutairi], this is Munir Nasser.  I'm sorry that I didn't respond to the message you left for me, as I went to the airport to pick up my daughter and got back late.  Anyway, to the point--I talked to Danni Nassif and he said that you didn't call him today.  He wants to talk to about this issue, so when you get a chance, call him on the following number: (202) [XXX-XXXX].  What I understand from him is this: the reason for the denial is because you and your son would be working in the same place, and this is against the internal laws and regulations of VOA.  I believe that they do not allow two people from the same family to work in the same place.  Danni can explain it to you in a better way, so try to call him when you get a chance.  Thank you."  I never received a rejection letter regarding my June 2003 application.  My son, Alsamwal Almutairi, held a contracting position as a website technician at Radio Sawa at the time.

      17.    Although Mr. Nassif claimed that he could not hire me because VOA regulations prohibited me and my son from working together at the same place, I know through observation and on information and belief that several other individuals at Radio Sawa worked with immediate family members around that time, including: (i) Mohammed Alshargwy

supervised his brother Adel Alshargwy; (ii) Moufac Harb worked with his wife Paula Yacoubian; (iii) Mr. Nassif worked with his wife; and (iv) Ghazwa al-Khaladi worked with her daughter.

18. On March 23, 2004, I applied for another GS-12 Arabic IRB position at Radio Sawa. This position was posted under Vacancy Announcement M/P-04-22. This position had a closing date of March 24, 2004. I received a rejection letter, dated March 25, 2004, which stated that although I was "among the best qualified applicants considered for the position," another individual had been hired. A true and correct copy of that letter is attached to this Declaration as Exhibit 8.

19. On March 8, 2004, I initiated contact with Debbie Young, an EEO Counselor at the BBG Office of Civil Rights, regarding filing an administrative complaint. A true and correct copy of the Initial Contact Sheet that Ms. Young reported is attached to this Declaration as Exhibit 9. On March 27, 2004, I sent a letter to Delia Johnson, the Director of the BBG's Office of Civil Rights, about my five applications. A true and correct copy of that letter is attached to this Declaration as Exhibit 10. On April 8, 2004, I was interviewed by a representative of the BBG Office of Civil Rights. On April 9, 2004, I sent a letter to Ms. Young about my June 2003 Application. A true and correct copy of that letter is attached to this Declaration as Exhibit 11.

20. On April 26, 2004, I submitted to the BBG's Office of Civil Rights my formal discrimination complaint, a true and correct copy of which is attached to this Declaration as Exhibit 12. In submitting my complaint, I included all of the previously described discriminatory actions, including that Radio Sawa refused to hire me as a GS-12 IRB in response

to my June 2003 job application. On June 4, 2004, Ms. Young issued her report, and gave me a Notice of Final Interview. A true and correct copy of the EEO Counselor's report is attached to this declaration as Exhibit 13. On June 17, 2004, the EEOC accepted my claim for processing.

21. On September 10, 2004, the EEOC concluded its investigation. A true and correct copy of the report of that investigation is attached to this Declaration as Exhibit 14. True and correct copies of a number of the exhibits included in that report are attached to this Declaration, including: (i) the Affidavit of Munir Nasser (dated Sept. 13, 2004) as Exhibit 15; (ii) the Affidavit of Daniel Nassif (dated July 30, 2004) as Exhibit 16; (iii) an Affidavit by myself (dated Aug. 25, 2004) as Exhibit 17; (iv) an Addendum to the Affidavit that I had executed (also dated Aug. 25, 2004) as Exhibit 18; (v) the Application package I submitted on March 23, 2004 under Vacancy Announcement M/P-04-22 as Exhibit 19; (vi) the Applicant Roster for Vacancy Announcement M/P-03-02 as Exhibit 20; (vii) BBG Guidance for Conducting Effective Recruitment, Interviews and Reference Checks as Exhibit 21; and (viii) the Qualified Candidates List for Vacancy Announcement M/P-04-22 as Exhibit 22.

22. The EEOC completed its review of my claim and issued to me a right-to-sue letter on May 31, 2006. I filed my complaint in this action in this Court on July 25, 2006.

23. On September 25, 2005, Munir Yahya Mawari provided me with a sworn statement for me to use in connection with my Title VII and Rehabilitation Act claim. A true and correct copy of that statement is attached to this Declaration as Exhibit 23. Mr. Mawari had served as a GS-12 IRB at Radio Sawa in and around June 2003. I had known him previously on a professional basis when we were both journalists in Yemen. In the early 1990s, Mr. Mawari sought a job from me at the *Alsiasa* Publishing House, where I was then editor-in-chief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Rockville, Maryland on June 27, 2010:

_____
Nasser Almutairi